IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RYAN WHITTINGTON,                           )
                                            )
                    Petitioner,             )        Civil Action No. 2:19-cv-247
                                            )
        v.                                  )
                                            )        Magistrate Judge Patricia L. Dodge
SUPERINTENDENT DELBALSO, *et al.*,          )
                                            )
                    Respondents.            )

**<u>MEMORANDUM</u>**

Pending before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF No. 1) filed by state prisoner Ryan Whittington ("Petitioner") pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court will deny the Petition and deny a certificate of appealability.

**I.      Introduction**

Petitioner challenges the judgment of sentence imposed upon him by the Court of Common Pleas of Allegheny County at criminal docket number CP-02-CR-986-2007. He raises two grounds for relief. In Claim I, Petitioner contends that the trial court erred in denying his request to sever his trial from that of his co-defendants, Steven Ashby and Taneesha Middleton. In Claim II, he contends that the mandatory minimum sentences allegedly imposed upon him pursuant to 42 PA. CONS. STAT. § 9712 violated the rule of *Alleyne v. United States*, 570 U.S. 99 (2013) because there was no finding by the jury that he used a firearm during the commission of a crime by evidence beyond a reasonable doubt.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

II.    **Relevant Background**[2]

The joint jury trial of Petitioner, Ashby, and Middleton was held in June 2008. On the first day of trial, Petitioner's attorney made an oral motion that Petitioner's trial be severed from Middleton's. Trial Tr. at 20-21.[3] Rule 583 of the Pennsylvania Rules of Criminal Procedure provides that a court "may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa. R. Crim. P. 583. The prejudice must be "real, not fanciful, and must be considered with the desirability of joint trials." *Commonwealth v. Lambert*, 603 A.2d 568, 573 (Pa. 1992). Where a conspiracy is charged, joint trials of the defendants are advisable. *See, e.g., Commonwealth v. Brown*, 925 A.2d 147, 161 (Pa. 2007). However, if a defendant can show that there is a strong probability of antagonistic defenses, the trial court should consider granting a severance. "A claim of mere hostility between defendants, or that one defendant may try to exonerate himself at the expense of the other, however, is an insufficient basis upon which to grant a motion to sever….severance should be granted only where the defenses are so antagonistic that they are irreconcilable—*i.e.*, the jury essentially would be forced to disbelieve the testimony on behalf of one defendant in order to believe the defense of his co-defendant." *Id.* at 161-62 (citations omitted).

The court denied Petitioner's motion to sever, *id.* at 21, as well as the subsequent requests for severance his counsel made during the trial. *Id.* at 172-77 (arguing that Petitioner and Ashby's

---

[2] Respondents submitted a hard copy of the state court record, including the transcripts. They also electronically filed as exhibits to their Answer relevant parts of the state court record, including the state court opinions cited herein.

[3] Middleton had filed an unsuccessful pre-trial motion that her case be severed from her co-defendants. Trial Tr. at 20-21. At the beginning of the trial, Petitioner's counsel asked that Petitioner be joined in that motion and requested that the court reconsider its previous ruling and sever Petitioner and Ashby's trial from Middleton's. *Id.*

trial should be severed from Middleton's because they were pursuing "two disparate theories of defense"); *id.* at 321 (same); *id.* at 434 (arguing that Petitioner's trial should be severed from Ashby's and Middleton's because "there are three disparate theories of defense here.")

The Superior Court of Pennsylvania summarized the evidence introduced at the trial as follows:

> [O]n October 17, 2006, Damien Graves was visiting the home of his girlfriend, [P.M.]…where she resided with her two minor children. At approximately 9:00 p.m., co-defendant Taneesha Middleton knocked on the apartment door and asked to borrow Graves' cell phone. Middleton used the cell phone to place a phone call in the hallway, after which, she returned the phone to Graves and left. Approximately five minutes later, Middleton returned and again requested to use Graves' cell phone. At that time, two armed men, one of whom was masked, burst into the apartment. The masked man was subsequently identified as [Petitioner]; the other as Steven Ashby.
>
> The two men instructed Graves to lie down and demanded money. Ashby then instructed [Petitioner] to retrieve [P.M.] from the bathroom, and subsequently ordered her to remove her clothes. While [P.M.] removed her clothing, Ashby and [Petitioner] took turns pistol whipping Graves in the face and head with their weapons, as a result of which Graves suffered lacerations to his head and jaw.
>
> After [P.M.] had stripped naked, [Petitioner] retrieved her minor children from the rear bedroom. Ashby proceeded to put a gun to the head of one child and threatened to kill him if more money was not turned over. Frustrated that no additional money was found, [Petitioner] removed his mask and demanded that Graves call someone to bring more money or else everyone would be killed. Although Graves complied and called his brother to bring over extra money for [Petitioner] and Ashby, Graves' brother never arrived. While they waited, Ashby and [Petitioner] took turns sexually assaulting [P.M.] in the bedroom.
>
> [P.M.] eventually escaped from the apartment through an open window, whereupon Ashby and [Petitioner] fled the premise. Approximately two weeks later, Graves and [P.M.] went to the police to report the robbery. While at the police station, Graves identified [Petitioner], Ashby, and Middleton as the individuals involved in the burglary through a photo array.

*Commonwealth v. Whittington*, No. 1880 WDA 2008, slip op. at 1-3 (Pa. Super. Ct. Mar. 25, 2010)

("*Whittington I*") (footnotes omitted), Resp's Ex. 21.

Graves and P.M. testified at the trial and made in-court identifications of Petitioner, Ashby, and Middleton as the individuals involved in the October 17, 2006 incident.[4] Trial Tr. at 64-66, 70-71, 189-90, 196-97. Each defendant maintained his or her innocence and contended that the Commonwealth failed to produce evidence of guilt beyond a reasonable doubt. Middleton testified in her own defense and stated that Ashby and Petitioner indicated to her that they merely wanted to "chill" with P.M. *Id.* at 367-70. She denied observing any criminal conduct and stated that she had no reason to know what Ashby and Petitioner were planning to Graves and P.M. *Id.* at 373.

Petitioner did not testify and presented no witnesses in his defense. In his closing submission, his attorney urged the jurors not to credit the trial testimony of Grave, P.M. and Middleton and pointed out reasons that they should find it unreliable. *Id.* at 444-67. Ashby also presented an alibi defense. He and his girlfriend both testified that they were together at her mother's house at the time the crimes where committed. *Id.* at 323-35, 345.

The jury found Petitioner guilty of five counts of simple assault, two counts of robbery, two counts of making terroristic threats, two counts of recklessly endangering another person, burglary, aggravated assault, and criminal conspiracy. It convicted Ashby on all charges filed against him, and acquitted Middleton of all charges. *Id.* at 4, n.14.

Prior to Petitioner's sentencing, the Commonwealth filed a notice of intention to seek application of the mandatory minimum sentencing provisions of 42 PA. CONS. STAT. § 9712 for those crimes he committed with firearms. Resp's Ex. 10. Petitioner's sentencing hearing was held

---

[4] P.M. testified that after she escaped from her apartment, she alerted a friend who then called the police. Trial Tr. at 207-08. When the police arrived at her apartment, Graves refused to speak with them or file a report. *Id.* at 88-90, 263-70. It was not until approximately two weeks after the incident that Graves and P.M. reported to the police what had happened and provided them with a description of their assailants. *Id.* at 273-75. Graves testified that he did not initially speak to the police because he was raised in a manner where "you just don't call the police." *Id.* at 93.

on September 23 and 24, 2008. At its conclusion the court sentenced him to a series of consecutive sentences, for a total aggregate term of imprisonment of 20 ½ to 46 years' imprisonment. Resp's Exs. 11, 12; *Whittington I*, No. 1880 WDA 2008, slip op. at 4.

In his direct appeal to the Superior Court, Petitioner, through new counsel, contended that the trial court's decision denying him a severance violated state law, his right to a fair trial under the Due Process Clause and his rights under the Confrontation Clause. *Whittington I*, No. 1880 WDA 2008, slip op. at 7-10. The Superior Court held that Petitioner waived his federal constitutional claims because he did not raise them to the trial court when he moved for a severance. *Id.* at 10. It denied Petitioner's state-law claim on the merits, explaining:

> …[Petitioner] argues that the trial court should have severed the cases because co-defendant Middleton's defense was "so conflicting and antagonistic that the jury would have had to disbelieve her testimony in order to accept his defense." [Petitioner's] Brief, at 28. In essence, [Petitioner] argues that his "passive defense," *i.e.*, declining to testify at trial and instead relying on the Commonwealth's burden to establish guilt beyond a reasonable doubt and arguing mistaken identity, was prejudicially undercut by Middleton's defense that she was merely an unwitting pawn in Ashby and [Petitioner's] plot to gain entrance into [P.M.'s] apartment. *Id.* at 27-28.
>
> Although [Petitioner] was well within his right to rely upon reasonable doubt as a defense tactic, we fail to see in what manner this more "passive" defense was at all antagonistic to that offered by Middleton. Although [Petitioner] baldly asserts that Middleton's defense and trial testimony "inevitably devalued his own passive defense in the eyes of the jury," this assertion alone amounts more to mere conjecture rather than a demonstration of actual prejudice. Moreover, we are not convinced that Whittington and Middleton's defenses were so antagonistic as to prove mutually exclusive. Indeed, the jury could well have regarded both Middleton's defense that she was tricked by two men in order to gain access to the apartment, and [Petitioner's] defense that he was mistakenly identified. This testimony, although conflicting, amounts to little more than mere finger pointing, and is thus insufficient to warrant a separate trial. [*Commonwealth v. Housman*, 986 A.2d 822, 834 (Pa. 2009)] (citing *Commonwealth v. Lambert*, 603 A.2d 568, 574 (Pa. 1992)). Therefore, we find no abuse of discretion in the trial court's refusal to sever [Petitioner's] case from that of his co-defendants'.

*Id.* at 7-9 (footnote committed).

The Superior Court denied all of Petitioner's guilt-phase claims in *Whittington I*. However, it remanded the case to the trial court because it concluded that two of Petitioner's assault convictions should have merged for sentencing purposes. *Id.* at 5-7. It expressly instructed that "[b]ecause [its] finding may affect the sentencing scheme…we therefore vacate the judgment of sentence for all convictions and remand for resentencing so that the trial court has the opportunity to restructure its entire sentencing scheme." *Id.* at 7.

The trial court resentenced Petitioner on July 6, 2011 to a series of consecutive sentences, for a total aggregate term of imprisonment of 20 ½ to 44 years' imprisonment. Prior to this proceeding, the Commonwealth *did not* file a notice requesting the imposition of a mandatory minimum sentence under § 9712.

Petitioner, through counsel, filed an appeal with the Superior Court in which he raised sentencing claims that are not relevant to this federal habeas case. The Superior Court affirmed Petitioner's judgment of sentence in *Commonwealth v. Whittington*, No. 1820 WDA 2011, slip op. (Pa. Super. Ct. Dec. 3, 2012) ("*Whittington II*"), Resp's Ex. 35. The Supreme Court of Pennsylvania denied a petition for allowance of appeal, Resp's Ex. 39, and the United States Supreme Court denied a petition for certiorari on January 13, 2014. That is the date Petitioner's judgment of sentence became final. *See, e.g., Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (citing *Griffith v. Kentucky*, 479 U.S. 314, 321, n.6 (1987)). Six months earlier, in June 2013, the Supreme Court issued *Alleyne*, within which it held for the first time that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury and proven beyond a reasonable doubt. 570 U.S. at 112.

In January 2015, Petitioner filed in state court a petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). The trial court, now the PCRA court,

appointed new counsel to represent him and counsel filed two amendments to the PCRA. In this PCRA proceeding, Petitioner argued, in relevant part, that the sentence imposed on his two robbery conviction were illegal under *Alleyne*.

The PCRA court held a hearing on Petitioner's *Alleyne* claim. Resp's Ex. 47. The Commonwealth's position was that the trial court did not apply § 9712's mandatory minimums when it sentenced Petitioner and, therefore, the rule in *Alleyne* did not affect his sentence. Hr'g Tr., 9/25/17, at 4-5. At the conclusion of the hearing, the PCRA court indicated that it would review the record in order to determine whether any mandatory minimums had been applied when Petitioner was sentenced. *Id.* at 7. On October 17, 2017, the PCRA court issued a final order denying Petitioner's *Alleyne* claim. Resp's Ex. 48. It found as fact that "the Court did not invoke any mandatory minimum" and that, as result, "[t]he sentences imposed at two counts of Robbery were not illegal pursuant to *Alleyne*[.]" *Id.*

The Superior Court affirmed the PCRA court's decision in *Commonwealth v. Whittington*, No. 1643 WDA 2017, slip op. (Pa. Super. Ct. Oct. 15, 2018) ("*Whittington III*"), Resp's Ex. 55. It noted that the finding of fact made by the PCRA court. *Id.* at 5-6. The Superior Court further explained:

> The Commonwealth did not file notice of its intent to invoke the mandatory minimum sentences prior to [Petitioner's July 6, 2011] re-sentencing and the mandatory minimums were never discussed at the re-sentencing. *See* generally N.T., 7/6/11. Moreover, the trial court did not re-sentence [Petitioner] to the mandatory minimums, *i.e.*, five to ten years' imprisonment at each robbery count. Instead, the trial court sentenced [Petitioner] to 7 to 15 years' imprisonment at each count. This indicates that the trial court did not impose the mandatory minimum sentences but instead carefully considered the statutory sentencing factors and concluded that a sentence of 7 to 15 years' imprisonment for each robbery conviction was appropriate…. Combined, these facts show that the trial court did not impose an illegal sentence and the PCRA court properly denied relief. *Commonwealth v. Zeigler*, 112 A.3d 656, 662 (Pa. Super. 2015) ("[T]he sentencing court exceeded the mandatory minimum sentence when it applied the standard guideline range sentence where a deadly weapon was used. Hence, the court did

not sentence the defendant based on the mandatory statute, and his sentence is not illegal.")

*Id.* at 5-6. The Supreme Court of Pennsylvania denied a petition for allowance of appeal on April 15, 2019.

As set forth above, Petitioner contends in Claim I of this federal habeas petition that the trial court erred in denying his motion to sever, and he contends in Claim II that his sentence is illegal under *Alleyne*. In their Answer, ECF No. 10, Respondents maintain that to the extent that Petitioner is raising any federal constitutional claim in Claim I, this Court must deny those claims because Petitioner procedurally defaulted them. With respect to Claim II, Respondents assert that this Court must deny it because the state courts found as fact that the trial court did not apply § 9712's mandatory minimums when it sentence Petitioner.

Petitioner did not file a Reply. *See* Local Rule 2254(E)(2) ("the petitioner may file a Reply (also known as 'a Traverse') within 30 days of the date the respondent files its Answer.").

## III.    Discussion

### A.    Jurisdiction and Standard of Review

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g., Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among

other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

AEDPA put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). It applies "to any claim that was adjudicated on the merits" by the Superior Court and it prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the decision by the Superior Court resolved the claim based on its substance, not on a procedural, or other, ground. *See, e.g., Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

Additionally, a finding of fact made by a state court always has been afforded considerable deference in a federal habeas proceeding. AEDPA continued that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C.

§ 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*[5]

### B.    Claim I

Petitioner asserts in Claim I that the trial court erred when it denied his motion for severance. To the extent that he is arguing that the trial court's decision was an abuse of discretion, that state-law claim is denied because it is not cognizable. *See, e.g., Estelle*, 502 U.S. at 67-68. Petitioner does not expressly argue to this Court that the trial court's decision violated any federal constitutional right. However, to the extent that it is his intent to challenge the trial court's decision on the federal constitutional grounds he raised on direct appeal, those claims are procedurally defaulted because the Superior Court in *Whittington I* determined he waived them by failing to first raise them to the trial court.

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). To succinctly summarize it, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v.*

---

[5] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004). The Court of Appeals has instructed that § 2254(d)(2), when it applies, provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

*Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000). The latter circumstance is what occurred in this case.

For the procedural default doctrine to apply here, the state waiver rule applied by the Superior Court in *Whittington I* must have been "adequate," *id.* at 729-30, meaning that it was "firmly established and regularly followed" at the time that the procedural default occurred. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see, e.g., Shotts v. Wetzel*, 724 F.3d 364, 370 (3d Cir. 2013); *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007). *See also Beard v. Kindler*, 558 U.S. 53 (2009) (even discretionary state rules can be "adequate"). The rule also must have been "independent" of federal law, meaning that the rule did not depend for its resolution on answering any federal law question. *See, e.g., Ake v. Oklahoma*, 470 U.S. 68, 75 (1985); Randy Hertz & James S. Liebman, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE, 7th Edition, § 26.2 (Matthew Bender).

Here, the waiver rule applied by the Superior Court in *Whittington I* was both "adequate" and "independent." Therefore, to the extent that Petitioner is raising in this habeas case the same federal constitutional claims that he brought to the Superior Court on direct appeal, those claims are procedurally defaulted.

When a claim is procedurally defaulted, a petitioner can overcome the default if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* This means that a procedural default may be excused if the case is one of the very rare ones in which the petitioner has presented evidence of "actual innocence" that is "so strong that a

court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Petitioner does not argue that he can overcome his default under either the "cause" and "actual prejudice" or the "miscarriage of justice" exceptions.

Based upon all of the forgoing, Claim I is denied. To the extent that Petitioner is claiming that the trial court's decision to deny his motion for a severance violated his federal constitutional rights, those claims are procedurally defaulted.

### C.    Claim II

When Petitioner litigated his *Alleyne* claim (Claim II) in his PCRA proceeding, the Commonwealth acknowledged that *if* the trial court had imposed a mandatory minimum sentence under § 9712 when it resentenced him on July 6, 2011, the rule of *Alleyne* would require that he be resentenced for a second time. However, the Commonwealth asserted that the trial court did not impose any mandatory minimum sentence, and the PCRA court and then Superior Court, in *Whittington III,* found as fact that it did not. Because the state courts' rejection of Petitioner's *Alleyne* claim was solely premised upon that factual determination, AEDPA requires that Petitioner demonstrate that the Superior Court's adjudication "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" 28 U.S.C. § 2254(d)(2), and he must produce "clear and convincing evidence" that the state courts' finding was wrong. *Id.*, § 2254(e)(1).

The state courts' determinations withstand review under AEDPA's deferential standards. Petitioner contends that the trial court imposed a mandatory minimum sentence upon him, but he does not direct the Court to any evidence to support that allegation, let alone the quantum of

evidence that is necessary to satisfy the burden imposed upon him §§ 2254(e)(1) and (d)(2). Therefore, Claim II is denied on the merits.

### D.     Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability on any of Petitioner's grounds for relief.

**IV.     Conclusion**

Based upon the foregoing, the Court concludes that Petitioner has not satisfied his burden of demonstrating that he entitled to the writ of habeas corpus. The Court will deny his Petition and it will deny a certificate of appealability.

An appropriate Order follows.


Date:  November 18, 2020                                     /s/ Patricia L. Dodge
                                                                         PATRICIA L. DODGE
                                                                         United States Magistrate Judge